ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| LESLIE A. RODRÍGUEZ GARCED<br><br>Peticionaria<br><br>v.<br><br>RAFAEL A. BERRÍOS VÁZQUEZ<br><br>Recurrido | KLCE202400345 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Caso Núm. CR2023RF00021<br><br>Sala: 001<br><br>Sobre: Divorcio (Ruptura Irreparable) |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2024.

Comparece la parte peticionaria, Leslie A. Rodríguez Garced (en adelante, señora Rodríguez Garced o parte peticionaria), para solicitarnos que se revise y revoque la *Resolución* emitida el 26 de enero de 2024 y notificada a las partes el mismo día, por el Tribunal de Primera Instancia, Sala Superior de Comerío, en la cual declaró *No Ha Lugar* la solicitud de hogar seguro que ésta interpuso. La parte peticionaria presentó una *Moción Solicitando Reconsideración* el 12 de febrero de 2024, que fue declarada *No Ha Lugar* el 20 de febrero de 2024 y notificada el 21 de febrero del mismo año.

En la *Resolución* emitida por este Tribunal el 2 de abril de 2024 y notificada el 4 de abril del mismo año, le concedimos al señor Rafael A. Berríos Vázquez (en adelante, parte recurrida o señor Berríos Vázquez) un término de veinte (20) días para que presentara su postura sobre el recurso. La parte recurrida no compareció.

Número Identificador

SEN2024 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, expedimos el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

**-I-**

Las partes contrajeron matrimonio el 24 de abril de 2018 en la ciudad de Springfield, Massachusetts en Estados Unidos. La peticionaria presentó demanda de divorcio el 2 de noviembre de 2023.[1] Entre las peticiones esgrimidas por la parte peticionaria, la señora Rodríguez Garced, solicitó la protección del Hogar Seguro en beneficio de sus hijos menores de edad y de ella misma.

El 7 de noviembre de 2023, el señor Berríos Vázquez fue emplazado mediante diligenciamiento personal.[2] El 6 de diciembre de 2023 el señor Berríos Vázquez presentó moción por derecho propio en la que expresó que aceptaba el divorcio y solicitaba que se tasara la propiedad ganancial que se obtuvo durante el matrimonio.[3] El mismo 6 de diciembre de 2023, el foro primario emitió una *Orden* en la que indicó que la división de los bienes que pertenecían a la sociedad legal de gananciales es un procedimiento que se tenía que llevar a cabo luego del divorcio y señaló vista de divorcio para el 18 de diciembre de 2023.[4]

Durante el matrimonio, las partes de epígrafe no procrearon ni adoptaron hijos. La señora Rodríguez Garced es madre de tres (3) menores de edad, procreados en otra relación. Así las cosas, se celebró vista de divorcio el 18 de diciembre de 2023 mediante videoconferencia, sin embargo, el señor Berríos Vázquez no compareció. La señora Rodríguez Garced solicitó el divorcio y, añadió que, bajo el inciso (g) del Artículo 478 del Código Civil de 2020, 31 LPRA sec. 6852, se concediera la protección del hogar

---

[1] Apéndice del Recurso de *Certiorari*, págs. 1-3.
[2] *Íd.*, págs. 5-7.
[3] *Íd.*, pág. 8.
[4] *Íd.*, pág. 10.

seguro hasta que sus hijos menores alcanzaran la mayoría de edad. El Tribunal de Primera Instancia dictó *Sentencia* el 18 de diciembre de 2023 declarando *Con Lugar* la Demanda de Divorcio por la causal de Ruptura Irreparable y le concedió a la señora Rodríguez Garced un término de veinte días para que presentara un Memorando de Derecho explicativo en apoyo a su solicitud de hogar seguro.[5]

El 18 de enero de 2024, la señora Rodríguez Garced presentó *"Memorando de Derecho Sobre: Hogar Seguro"*.[6] En síntesis, argumentó nuevamente sobre el derecho de alimentos y las facultades que emanan de la patria potestad y la petición del derecho de hogar seguro al amparo de los artículos 476, 477 y 478 (g) del Código Civil, *supra.* 31 LPRA secs. 6841, 6851 y 6852, respectivamente. La parte peticionaria arguyó que "no cuenta con muchos recursos para moverse del lugar y pese a eso, la parte demandada había abandonado el hogar para que la Sra. Rodríguez residiera allí junto a sus hijos menores".[7]

El 26 de enero de 2024, el Foro a *quo* dictó *Resolución* en la que declaró *No Ha Lugar* la solicitud de hogar seguro.[8] El foro recurrido expresó que "en este caso se trata[ba] de unos menores que vivieron por algún tiempo en el hogar que constituyeron las partes mientras duró el matrimonio. No son hijos de la parte demandada, por tanto, [éste] no viene obligado a proveerle alimentos ni hogar seguro. Esta obligación la tiene la parte demandante en conjunto con el padre de los menores".[9]

Inconforme con el dictamen, la parte peticionaria presentó, el 12 de febrero de 2024 una *Moción de Reconsideración* basado en los mismos argumentos antes esbozados.[10] El 13 de febrero de 2024 el

---

[5] Apéndice del Recurso de *Certiorari*, págs. 14-15.
[6] *Íd.*, págs. 17-27.
[7] *Íd.*, pág. 26.
[8] *Íd.*, págs. 28-30.
[9] Apéndice del Recurso de *Certiorari*, pág. 30.
[10] *Íd.*, págs. 31-38.

foro primario emitió *Resolución* declarando *No Ha Lugar* la moción de reconsideración bajo el concepto de que la misma fue radicada fuera de término, ya que el término de vencimiento era el sábado 10 de febrero de 2024, según el Tribunal.[11] El 20 de febrero de 2024, la peticionaria presentó una *Moción Solicitando Reconsideración* a la *Resolución* emitida el 13 de febrero de 2024 alegando que los términos que vencían sábado o días feriados, según establecen las Reglas de Procedimiento Civil, se extendían hasta el próximo día laborable.[12] El 20 de febrero de 2024 y notificada el 21 de febrero del mismo año, el Foro a *quo* emitió *Resolución* declarando *Ha Lugar* la moción de reconsideración sobre los términos y declarando *No Ha Lugar* la *Reconsideración sobre Hogar Seguro*.[13]

Inconforme con el dictamen, el 25 de marzo de 2024, la parte peticionaria presentó el auto de *Certiorari* antes nos, donde le imputó al foro recurrido los siguientes señalamientos de error:

> ERRÓ EL TPI AL DETERMINAR QUE NO PROCEDE LA PROTECCIÓN DE HOGAR SEGURO PARA LOS HIJOS MENORES DE EDAD DE UNA EXCÓNYUGE COPROPIETARIA DE UN INMUEBLE RESIDENCIAL PERTENECIENTE A LA SOCIEDAD LEGAL DE GANANCIALES POR NO SER HIJOS DEL OTRO EXCÓNYUGE.
>
> ERRÓ EL TPI AL SOBREPONER EL INTERÉS PROPIETARIO DE UN EXCÓNYUGE SOBRE EL DEBER DE PARENS PATRIAE QUE TIENE EL ESTADO PARA CON LOS MENORES LAS FACULTADES Y DEBERES QUE EMANAN DE LA PATRIA POTESTAD DE LA EXCÓNYUGE, MADRE DE LOS MENORES.

Examinado el recurso en su totalidad, procedemos a establecer el derecho aplicable y resolver.

**-II-**

**-*A*-**

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar

---

[11] *Íd.*, pág. 39.
[12] *Íd.*, págs. 40-41.
[13] *Íd.*, pág. 16.

las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR 194 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019). En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR*, *supra*, pág. 338. Así pues, la discreción

judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Id.* pág. 338. Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra*; *Rivera et al. v. Arcos Dorados et al. supra*; *Mun. Caguas v. JRO Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León,* 176 DPR 913, 918 (2009). Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio

adecuado para corregir el error señalado. *Id.* pág. 918. Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra*; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

### *-B-*

Como regla general, las decisiones de los tribunales de instancia merecen gran flexibilidad y deferencia, debido a que es el foro que conoce las particularidades del caso. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 735 (2018). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-Alayón,* 2023 TSPR 145; 213 DPR__ (2023). Por tanto, los foros apelativos no deben pretender administrar ni manejar el curso ordinario de los casos ante el Tribunal de Primera Instancia. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

No obstante, la discreción ha de ceder cuando se configura: (1) un claro abuso de discreción, (2) el tribunal actuó con prejuicio o parcialidad o (3) el tribunal se equivocó en la interpretación o aplicación de una norma procesal o de derecho sustantivo. *BPPR v. SLG Gómez-Alayón, supra.* El adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. La discreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo v. Sánchez González,* 90 DPR 197, 200 (1964). El

abuso de discreción se puede manifestar de varias maneras en el ámbito judicial. *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

Es menester señalar que "[l]a discreción es el instrumento más poderoso reservado a los jueces para hacer justicia [,] sin embargo, ésta no puede ejercitarse en el vacío ni de modo arbitrario, sino que invariablemente debe haber una razón bien fundada que mueva la conciencia judicial hacia la concesión de la prórroga solicitada". *Rivera v. Sucn. Pérez,* 165 DPR 228, 239–40 (2005). Es por ello que para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios: (1) el juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente. *Pueblo v. Custodio Colón,* 192 DPR 567, 589 (2015).

El Tribunal de Apelaciones no debe elaborar sobre la pasión, el prejuicio y la parcialidad si no puede fundamentar que esto ocurrió en el caso ante su consideración. *Gómez Márquez v. Periódico el Oriental Inc.,* 203 DPR 783, 785 (2020). En casos en que el Tribunal de Instancia incurra en pasión, prejuicio, error manifiesto, y, por ende, en abuso de discreción, las situaciones reseñadas impiden que se le conceda la deferencia que como regla general se le confiere. Esto se hace necesario para no incurrir en una injusticia. *Pueblo v. De Jesús Mercado, supra*, pág. 780.

-**C**-

El derecho a hogar seguro se estableció por vez primera "mediante la aprobación de la Ley de 12 de marzo de 1903, conocida como la ley para definir el *homestead* (hogar seguro) y para

exentarlo de una venta forzosa". *Candelario Vargas v. Muñiz Díaz,* 171 DPR 530, 537 (2007). "Posteriormente, la Ley Núm. 87 de 13 de mayo de 1936 (Ley Núm. 87 o Ley de Hogar Seguro) derogó la ley de 1903, aun cuando no hizo mención del Código Civil. La Ley Núm. 87 aparece codificada en el Código Civil, 31 LPRA secs. 1851–1857. Recientemente, las disposiciones sobre hogar seguro sufrieron enmiendas para aumentar la cuantía del hogar seguro. Ley Núm. 116 de 2 de mayo de 2003". *Íd.,* pág. 537. A su vez, la Ley Núm. 87-1936 fue derogada por la Ley Núm. 195-2011, 31 LPRA sec. 1858 nota), también conocida como "Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar".

A su vez, nuestro más alto foro ha reconocido que, el derecho a hogar seguro es "una forma de contribución con la obligación de satisfacer alimentos, que como resultado de la separación de la pareja le corresponde al padre alimentista". *Candelario Vargas v. Muñiz Díaz, supra,* pág. 546. Empero, el Tribunal Supremo de Puerto Rico también ha extendido dicha protección hacia inmuebles privativos de algunos de los progenitores en búsqueda del bienestar de los menores de edad. *Candelario Vargas v. Muñiz Díaz, supra*, pág. 547. Es decir, dicho enfoque ha sido sostenido sobre los menores de edad que son producto de relaciones consensuales.

En virtud de los avances jurisprudenciales y esfuerzos dirigidos hacia la protección de los menores de edad, el Código Civil de Puerto Rico, 1930, 31 LPRA, sec. 385A, incorporó dicha normativa en el artículo 109-A, mediante la Ley Núm. 184-1997.[14]

---

[14] El Código Civil de 1930, fue derogado por la Ley Núm. 55-200, también conocida como el "Código Civil de 2020". El artículo 109-A del Código Civil de 1930 disponía: a) El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta veinticinco (25) años de edad, tendrá derecho a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio. La propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose que el

De esta forma, el Tribunal Supremo de Puerto Rico interpretó que "**el efecto principal que tuvo el referido Art. 109–A fue disponer que la propiedad ganancial puede ser reclamada como hogar seguro por el cónyuge custodio de los hijos**". *Rodríguez v. Pérez, supra*, pág. 653. (Énfasis suplido).

Con la entrada en vigor del Código Civil de 2020, se otorgó el derecho al excónyuge para reclamar la protección del derecho seguro. Esta normativa debe evaluarse en conjunto para poder armonizar el derecho de las partes. En esencia, el artículo 476 del Código Civil, *supra*, establece los criterios para la atribución preferente sobre la vivienda familiar:

> Al momento de adjudicarse los bienes comunes del matrimonio disuelto, **cualquiera de los excónyuges puede reclamar la atribución preferente de la vivienda que, al momento de la disolución, constituye el hogar principal del matrimonio y de la familia**. Al estimar la petición de atribución preferente sobre la vivienda familiar, el tribunal debe considerar las siguientes circunstancias:
>
> (a) la posibilidad de cada excónyuge de adquirir su propia vivienda;
>
> (b) la existencia de otros inmuebles en el patrimonio conyugal que pueden cumplir el mismo propósito; y
>
> (c) la solvencia económica de ambos excónyuges para atender sus propias necesidades.
> El hecho de que pueda concederse al reclamante tal atribución preferente no impide que este pueda reclamar el derecho a permanecer en la vivienda familiar, según queda regulado en los artículos siguientes. (31 LPRA sec. 6841). (Énfasis suplido).

Según el tratadista Garay Aubán:

> "[e]l Artículo establece los criterios que deben considerarse al determinar a cuál de los cónyuges se le adjudica la titularidad de la vivienda familiar. En primer lugar, el bien que se reclama tiene que ser el que sirvió de vivienda principal para la familia constituida por los excónyuges e hijos durante la vigencia de su

---

derecho de hogar seguro podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación. El cónyuge que reclama el derecho a hogar seguro podrá retener todos aquellos bienes de uso ordinario en la vivienda. Cuando se reclame el derecho de hogar seguro luego de decretado el divorcio, el mismo podrá ser concedido por el Tribunal que conoció del divorcio. 31 LPRA sec. 385ª.

matrimonio. En segundo lugar, el Artículo promueve la igualdad de condiciones entre excónyuges, pues cualquiera de ellos puede solicitar la atribución de la vivienda". MIGUEL R. GARAY AUBÁN, CÓDIGO CIVIL DE PUERTO RICO 2020 Y SU HISTORIAL LEGISLATIVO, 316 (2020).

Como podemos observar, el precitado artículo se dirige a brindar un trato igualitario entre los ahora excónyuges en relación con la vivienda familiar donde se mantendrán los hijos habidos dentro del matrimonio.

Por otro lado, se dispone en el artículo 477 del Código Civil, *supra*, el derecho a permanecer en la vivienda familiar siendo designado como hogar seguro. De manera que, se establece lo siguiente:

> **Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad, puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio.** Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia. En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales. En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal determinará como se cumplirá con el derecho a hogar seguro. 31 LPRA sec. 6851. (Énfasis suplido).

Sobre este particular, el profesor Garay Aubán señala que:

> **"[l]a norma protege al cónyuge que carece de medios propios para adquirir otra vivienda y la protección del bienestar óptimo de los hijos que están bajo su custodia. Permite la reclamación del derecho como un pleito independiente al divorcio e, incluso, permite solicitarlo después de la sentencia de divorcio. En otras palabras, el derecho a hogar seguro puede solicitarse como medida provisional o como medida posterior a la disolución. Aun cuando el reclamo se haga como un pleito independiente luego del divorcio, el derecho a hogar seguro surge de la misma acción de la petición de divorcio y se ventilará en el mismo expediente del caso"**. GARAY AUBÁN, *supra*, pág. 317 (2020). (Énfasis suplido).

De igual forma sostiene que, **"[c]omo el criterio para solicitar el derecho a la vivienda familiar es la necesidad**, es

imposible fijar un plazo para su reclamo. Obviamente, el tribunal evaluará la diligencia exhibida en la solicitud, porque la incuria puede provocar la extinción del derecho". *Íd.* pág. 317. Finalmente, por otra parte:

> "este Artículo reconoce que el derecho de hogar seguro puede recaer en un bien privativo si se utilizó como la vivienda familiar principal durante el matrimonio. **La norma responde a los fines de la justicia y equidad.** Esta protección se hará extensiva independientemente del régimen económico vigente en el matrimonio. Lo determinante es que la residencia constituya el domicilio conyugal al momento de la radicación de la acción de divorcio o nulidad. En casos donde la vivienda conyugal tenga carácter privativo, se prohíbe la enajenación del inmueble por parte del titular durante la vigencia de esta medida provisional. La propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure alguna de las condiciones en virtud de las cuales se concedió". GARAY AUBÁN, *supra*, pág. 316-317. (Énfasis suplido).

Por otro lado, en el artículo 478 del Código Civil de 2020, *supra,* se disponen los criterios para conceder el derecho de Hogar Seguro. Esta pieza legislativa establece lo siguiente:

> **Artículo 478. — Criterios para conceder el derecho. Para conceder el derecho a permanecer en la vivienda familiar, el tribunal debe considerar las siguientes circunstancias**:
> **(a)** los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución;
> **(b)** si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;
> **(c)** si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;
> **(d)** si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;
> **(e)** si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;
> **(f) si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal;** y
> **(g)** cualquier otro factor que sea pertinente para justificar el reclamo.
> 31 LPRA sec. 6853. (Énfasis suplido).

Como podemos reconocer, este artículo 478 del Código Civil, *supra*, tiene su procedencia del derogado artículo 109-A, *supra*, y la jurisprudencia interpretativa del Tribunal Supremo de Puerto Rico que ha sido codificada al respecto bajo el tema de hogar seguro.

Finalmente, el artículo 479 del Código Civil, *supra*, sobre la constitución de Hogar Seguro dispone que: "[d]esde la concesión del derecho a permanecer en la vivienda familiar, el inmueble se convierte en el hogar seguro del solicitante y de los beneficiados al momento de su concesión que han de convivir en él. El tribunal identificará a todos los beneficiados en la sentencia y establecerá las condiciones y el plazo en que cada cual ha de disfrutarlo". 31 LPRA sec. 6853.

Como podemos concluir, tanto el legislador como el Tribunal Supremo de Puerto Rico se han encaminado en mantener y proteger no solo el mejor bienestar de los menores procreados entre las partes, sino a proteger al excónyuge bajo necesidad. No puede ser de otra manera, es por lo que sostiene nuestro máximo foro judicial, "[l]a preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal". *Cruz Cruz v. Irizarry Tirado,* 107 DPR 655, 660 (1978).

Cónsono con dichos pronunciamientos, nuestro más alto Foro judicial ha sido enfático en que:

> "[l]a propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose que[,] el derecho de hogar seguro podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. ***Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación***". *Candelario Vargas v. Muñiz Díaz, supra,* pág. 542; *Rodríguez v. Pérez, supra,* pág. 652. (Énfasis y bastardillas en el original).

Toda vez que: "el reconocimiento del derecho a hogar seguro no es automático; se basa en los preceptos de equidad vislumbrados según las circunstancias de cada caso y debe satisfacer una necesidad legítima". *Candelario Vargas v. Muñiz Díaz, supra.* pág. 548. De esta forma, se cumple así el mandato de derecho positivo encarnado en el artículo 3 de la Ley de Hogar Seguro, *supra* y "queda vindicada la fundamental obligación legal y moral del padre recurrido de proveer albergue a su familia inmediata". *Cruz Cruz v. Irizarry Tirado,* 107 DPR 655*,* 661-662(1978).

Es por ello que "la referida disposición estatutaria estableció claramente que cuando se reclama el derecho cobijado en éste el juzgador deberá determinar *'lo que en justicia proceda'*". *Rodríguez v. Pérez, supra,* pág. 652. (Bastardillas en el original). Es decir, "el legislador entendió, al igual que la jurisprudencia desarrollada hasta el momento, que el derecho a reclamar la propiedad ganancial como hogar seguro no debía otorgarse en forma automática". *Íd.,* pág. 652.

**-III-**

La parte peticionaria recurre ante nos, solicitando que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia donde denegó la solicitud de hogar seguro presentada por la señora Rodríguez Garced.

Por estar intrínsecamente atados, procederemos a discutir los señalamientos de error en conjunto. En esencia, la señora Rodríguez Garced arguyó que erró el Tribunal de Primera Instancia al determinar que no procede la protección de hogar seguro para los hijos menores de edad de una excónyuge copropietaria de un inmueble residencial perteneciente a la sociedad legal de gananciales, por no ser hijos del otro excónyuge copropietario. Añadió que, incidió el foro primario al sobreponer el interés propietario de un excónyuge sobre el deber de *Parens Patriae* que

tiene el estado para con los menores las facultades y deberes que emanan de la patria potestad de la excónyuge, madre de los menores.

Es preciso señalar que, los tribunales estamos llamados a velar que todo proceso adjudicativo se oriente en hallar la verdad y hacer justicia. *Isla Verde Rental v. García*, 165 DPR 499, 505 (2005). Porque en esencia, la propia razón de ser de los foros judiciales es impartir justicia. *Piazza Vélez v. Isla del Río, Inc.* 158 DPR 440, 448 (2003).

De entrada, es preciso destacar que la controversia ante nos estriba en si el Foro a *quo* actuó correctamente al denegar el derecho de hogar seguro solicitado por la parte peticionaria en su carácter personal, sin haber aquilatado prueba sobre la presunta necesidad alegada por ella.

De ordinario, la jurisprudencia que se ha desarrollado sobre el hogar seguro ha estado dirigida hacia el reclamo del padre custodio cuando extinguida la relación matrimonial o de concubinato, solicita hogar seguro a favor de los menores procreados entre las partes sobre un bien ganancial o privativo derivado de las obligaciones de la patria potestad. Es decir, el norte en esos casos siempre ha girado en garantizar la vivienda de los menores aun en circunstancias cuando hayan advenido a su mayoría de edad y se encuentren cursando estudios superiores que comenzaron antes de los veintiún (21) años.

El derecho de alimentos y los deberes que emanan de la patria potestad se refieren enteramente aquellos que atañen a los padres de los menores. La parte peticionaria argumenta que bajo el artículo 478 (g), del Código Civil, *supra*, debe concedérsele el derecho para permanecer en la vivienda por "cualquier otro factor que sea pertinente para justificar el reclamo". Como destacamos previamente, las responsabilidades que derivan de la patria potestad

incluyen ofrecer techo a los menores de edad, que en este caso le correspondería suplirlas a la señora Rodríguez Garced y al padre de sus menores de edad.

Ahora bien, realizando una lectura integral del derecho previamente esbozado, concluimos que al amparo de los artículos 476 y 477 del Código Civil, *supra*, la señora Rodríguez Garced puede solicitar hogar seguro en su carácter individual como excónyuge, tal como hizo en su memorando de derecho alegando que "no cuenta con muchos recursos para moverse del hogar".[15] Ante ello le corresponderá al Tribunal de Primera Instancia celebrar una vista evidenciaria para que la parte peticionaria demuestre si cumple con los requisitos instituidos en el artículo 476 del Código Civil, *supra*, los cuales son: (a) la posibilidad de cada excónyuge de adquirir su propia vivienda; (b) la existencia de otros inmuebles en el patrimonio conyugal que pueden cumplir el mismo propósito; y (c) la solvencia económica de ambos excónyuges para atender sus propias necesidades.

Nos comenta el Profesor Garay Aubán que bajo el precitado artículo se establecen dos limitaciones: **(1) el uso y disfrute del inmueble está sujeto a unas condiciones y; (2) el derecho a hogar seguro tendrá vigencia por un plazo determinado**. GARAY AUBÁN, *supra*, pág. 318. (Énfasis suplido). De igual forma explica que: "la primera restricción se refiere a los sujetos que pueden disfrutar de la vivienda (las personas que el tribunal designe). La segunda establece que el plazo, así como las condiciones, pueden ser distintos para cada uno de los beneficiados". *Íd.* El tribunal también deberá evaluar si la parte peticionaria "tiene necesidad de esa protección especial, por su edad o situación personal." artículo 478(f) del Código Civil, *supra.*

---

[15] Apéndice del Recurso de *Certiorari,* pág. 26.

En resumen, concluimos que las partes estuvieron casadas desde el 24 de abril de 2018 hasta el 18 de diciembre de 2023 bajo el régimen de la sociedad legal de gananciales. Las partes adquirieron y constituyeron la residencia objeto del presente litigio como la residencia matrimonial donde convivían con los hijos menores de edad de la señora Rodríguez Garced procreados en una relación previa. Al llevarse a cabo la ruptura del vínculo matrimonial, la señora Rodríguez Garced peticionó el derecho de hogar seguro al amparo del artículo 478(g) del Código Civil, el cual resolvemos no atiende la controversia de marras.

Evaluado el derecho antes esbozado y aplicado a los hechos de este caso, concluimos que a la señora Rodríguez Garced puede instar una solicitud de derecho de hogar seguro como excónyuge al amparo de los artículos 476, 477 y 478(f) del Código Civil de Puerto Rico, *supra.*

**-IV-**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *certiorari* y *revocamos* la *Resolución* recurrida y devolvemos al Tribunal de Primera Instancia para la celebración de una Vista Evidenciaria en la que dicho foro deberá aquilatar la prueba relacionada con la alegada necesidad de la parte peticionaria que justifica su solicitud de hogar seguro en su carácter personal.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones